15-43-34 John Holbrook v. Stephanie Dumas. Oral argument not to exceed 15 minutes per side. Mr. Ford III for the Plaintiff. Your Honors, I would ask for five minutes for rebuttal. May it please the Court, opposing counsel. Your Honor, this is a case regarding retaliation for exercising First Amendment rights brought under 1983. The elements of these claims are engagement in protected speech, an adverse employment action, and a causal connection between the two. Now in this case we have a termination letter. My client's employment was terminated. The termination letter specifically states three instances of speech which were the reasons for his termination. So at issue here is the first element, whether that speech, those three instances of speech, were protected speech. Now I think that there's been a lot of case law on this regarding what is constitutionally protected speech for somebody, a public employee. Essentially it boils down to whether he's speaking on a matter involving the operation of his public employment or whether he's speaking on a matter of public concern. I think the parameters were set by the two recent Supreme Court decisions in Garcetti where they found that it was speech that fell within the scope of his employment as a public employee. And more recently in the Lane v. Franks case which sort of pushed back on Garcetti and in that case they found that the plaintiff was acting and conducting private speech or acting as a citizen. Now I'd like to say that this case is very fact driven. I'd like to say that one of the overriding concerns here is that when my client received a copy of the speech from the city manager, it was also given to all the members of the council. So if you would look, it was already disclosed to people outside of the city administration and that was not by my client. Now my client subsequently sent a copy of the letter and this is the letter that I think in my brief I call it the PEP letter where they're saying as of a future date, October 2nd, they're going to withdraw their liability insurance. And the issue then is without liability insurance whether the city can still operate or the village can still operate a fire department. So my client based upon the letter that he received from the council and from talking with the city village manager sent out the email. I'm just missing something here. I must have a complete misunderstanding of the facts. I thought that the city manager turned the email over to your client several days before the city council meeting. Okay, this happened on a Friday afternoon. It was an email that was sent to the head of the fire department, the head of the police department and to all the city council members. Then on the following Monday it was disclosed at the city council meeting. Now the email that my client sent to the members of the fire department occurred on a Saturday. And essentially in that letter he's relating that his conversation with the manager that there's a possibility the fire department might be closing and sending them a copy of the letter that he had received from the city manager. So really were two disclosures to your client. One in the meeting with Dumas and then the second one where he's copied on the email that went to others. They both occur on Friday and then he sends out his email on Saturday? Yes. Okay. Then there were two disclosures, but at the second one it was a meeting that was for some other purpose and the subject of this letter, which he had already disseminated, came up. And he asked if it meant that there was a closing of the department and she said that's what it looks like or words to that effect. Then he wrote the email because he felt people should know about the severity of the situation if they do in fact cannot find new liability insurance. That's the email he sends to his employees and the capacity as fire chief. That's correct. Now your honor, I believe that... Once he says that he, the email says he sent it as a fire chief and he admits that he's sending it in the course of his duties as a fire chief, that's what as I understand it he says in his deposition. At least with respect to the email, it becomes harder to see how that's a matter of public concern as opposed to something between the fire chief and his employees? Your honor, I think that you have to look to the Garcetti decision which tells you what it would be within the scope of the employment. It's a quote, whether the speech at issue is ordinarily within the scope of the employee's duties, not whether it merely concerns those duties. That's the distinction that Garcetti draws that the U.S. Supreme Court picks up in Franks. Now in this case, the issue, the district court said that looking at the same facts that you just mentioned, this is nothing more than a personnel issue. But if this is a personnel issue, and I concede that my client would ordinarily be involved in personnel issues, but this is not a determination of whether one employee is going to be fired or another, the normal person. This is a question of whether the whole department is going to be closed or not. All I'm trying to figure out is under the first step of the Garcetti inquiry, which is whether he was speaking as a citizen, as to how you turn, at least with respect to the email, an email that went out in his capacity as fire chief, and he admits he was speaking as the fire chief to his employees, how do you now characterize that as speaking as a citizen? The Garcetti court focuses on the job duties. Is this fall within his job duties? And what I'm pointing out to you, Your Honor, is that the question here is whether or not the fire department is going to remain open or closed. That's not within his normal job duties. That's something higher. That's the city manager and the council's decision. Would you say that we look to a job description, and if it's not specifically spelled out in the job description, i.e. telling the employees, his own employees, they may lose a job, then he becomes speaking as a citizen? Is that how you read Garcetti? It doesn't matter whether the speech occurs at work, Your Honor, but it can still be protected speech. Now, I think you have to look at the Garcetti decision because that defines one of the parameters. In that case, the attorney who was complaining that he had been retaliated wrote a memo that was part of his ordinary work that he did. He wrote many of those memos, and he was complaining about one that was critical of the FBI. When he sends the email, was he speaking as an employee? Your Honor, I believe it's hard to say he was not speaking as an employee because he does not have any control over whether the fire department is going to be closed or whether it's going to remain open. That's outside the scope of his duties. What complicates matter is he sent it on the official email, and I will concede that. Sends it on an official email, in his capacity as the fire chief. He signed it as fire chief, yes. So if we assume, then, that he's speaking as an employee, then the next part of that first test is whether it's a matter only of personal interest. When he's saying, you may lose your jobs, is that not a matter of personal interest? Your Honor, I think the matter is not. I think it depends on how you're going to cast it. You cannot say that losing your job can be separated from the closing of the fire department because these people aren't going to lose their job because of their merits. They're losing it because the fire department, for reasons beyond their control, is closing. So that is an issue that's not of his personal concern. But he says, when he's asked why he did that, he explains, well, I thought they should know so they can be looking out for another job. Not because the city's not going to have fire protection or the city's poorly run. I understand how you're trying to, as you say, cast this. He's looking at what it says. What he actually said in his deposition was, I believe they need to know. He didn't say why they needed to know. He said they needed to know. Your Honor, that only applies to the Saturday email. He was also terminated because of the posting on his Facebook page after the meeting and because of a conversation he had with an acquaintance he knew at a different fire department concerning how you went about getting new fire insurance. Both of those things would be, in no way, can be connected to his employment or in his role as fire chief. The Facebook page went out to the general public and the conversation with the other person was as a private citizen. He wasn't acting in his capacity as a fire chief then. So the district court has focused in on one aspect of this, but it's broader than that. And besides, I don't believe that if you read the Garcetti case, it's important that the speech has to be part of his normal job duties. And in this case, whether or not you're going to continue to operate a fire department is outside the scope of his job duties. It involves him. That's the quote that I said. It concerns his employment, but it's not within the scope of his employment. And for those reasons, we think that this is ostensibly protected speech. Now, if it is protected speech, then you have to look at a balancing test because the municipality may have a right to ensure efficiency that outweighs the protected speech. In this case, the claim is, based upon two questions asked at the deposition, that he caused some disruption in morale and people to lose their job. In fact, what – Counsel, you'll see that your red light is on. You're welcome to keep going, but it is – I was simply going to say those are too vague in order – we don't know who the person is or why they left. That's too vague to claim an interest in safety or stability that outweighs my client's free speech rights. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Jackie Jewell on behalf of Appellee Stephanie Dumas. This is a simple case about a former fire chief who was justly terminated after he sent communications in his capacity as a fire chief to his employees, thereby causing them fear that they could potentially lose their jobs. Mr. Holbrook's actions adversely affected employee morale and caused some of them to leave the position at the fire department. The district court properly granted summary judgment, and we ask this court to affirm that affirmation of summary judgment for two main reasons. First, Mr. Holbrook spoke in his official capacity as a fire chief about matters that were not of public concern. And second, Ms. Dumas is entitled to qualified immunity because her decision to terminate Mr. Holbrook was reasonable and clearly not a violation of his rights. As to the first point, Mr. Holbrook spoke in his official capacity as a fire chief about matters of public concern, excuse me, that were not of matters of public concern. Why can you say that this is not a matter of public concern? Yes, Your Honor, that goes to the second element in determining whether or not a public employee's speech is protected. The United States Supreme Court has defined a matter of public concern to include matters of political, social, or other concerns of the community. Well, so not having a fire department would sort of be one of those? Yes, Your Honor, that would be the case, but the Supreme Court has also narrowed that definition and required courts to look at the actual content of the speech that was produced. If you look at the July 26, 2014 email that Mr. Holbrook sent to his employees, it states as follows, If the village does not find another insurance carrier, we could potentially be out of a job. There is no reference in this communication, nor any other communication, the Facebook post, or the communication with the village of, excuse me, the Wyoming Fire Department, that the fire department was, in fact, closing and that these people could be out of a job. But we're talking about the concern that if the insurance carrier isn't found, we could potentially be out of a job. In other words, the whole fire department could be closed. Now, there are some implicit aspects to what I added there, but isn't that we're taking the facts in the light most favorable to the plaintiff at this stage, and isn't that a clear implication that the whole department could close? Respectfully, no, Your Honor. This court's holding in I can have a fire department Excuse me, I'm sorry, excuse me. I can have a fire department if the employees lose their job. Well, at this point, when Mr. Holbrook sent that email, it was all speculation. It wasn't certain that the people, that the fire department was going to close. Does he have to be certain of a problem in order for it to be a matter of public concern? Or can he not say, golly gee, if this happens and that happens, something terrible will happen to the village? It doesn't have, Your Honor, he does not have to be certain. However, what's important and what the district court considered is whether this was, this speech was a matter of internal personnel disputes. And it's our position that this was an internal personnel dispute because it relates to the issue of the loss of liability and the replications that could occur, these individuals losing their job and being displaced. I could understand that argument if what the email said was, John Jones has been stealing from the fire department, and I think he should be fired. That conceivably would be something that the fire chief should be doing as a matter of his regular duties as a fire chief. And if he's, you know, making up something about John Jones, then it would be legitimate to fire the fire chief for that statement. But here it's a much more general kind of thing. And normally insurance coverage, I would think, is not an issue that the fire chief deals with. Your Honor, just because the fire chief doesn't deal with personnel issues or doesn't deal with the loss of insurance liability, this court has held in Weisberg v. Geauga Park District that speech can be constituted as official duties if it's made pursuant to ad hoc or de facto duties, not appearing in any written job description. So to answer your question that you posed to the appellant, whether or not this was in his description and whether that's required, under this court's precedent, it's not required for this court to hold that Chief Holbrook was acting in his official job duties. Furthermore, appellant admits that he both received and relayed the information concerning job loss and the closure of the fire department as his role as a fire chief. If that's not enough for this court to hold that he was acting in his duty as fire chief, he also sent the email from his Lincoln Heights Village Fire email. He also signed the signature block, Chief of Fire Chief. And again, in his deposition testimony on page ID of this court, 124, he admits that he was doing all of this information in his role as fire chief. I think part of the problem here is we're kind of skipping back and forth between these various components. It seems to me it's a hard role for you to take to say this wasn't a matter of public concern, no employees, no fire department. It seems to me the public should be concerned about that. So if we're focusing in on the first part of the test, you can make a pretty good argument about the email, sends it on the city email, he signs it as fire chief. The Facebook page, that's his own page, right? It's my understanding that it was his personal page, Your Honor. And so we don't have that. It says fire department, police department, and maintenance department are in jeopardy. If we don't get insurance, they may face even more severe issues. That sounds like it's getting more towards public concern than employment concerns in the email. So why am I wrong about that? I mean, Your Honor, if you look at who the Facebook post was directed to, it was directed to all current and past employees. That's one point, one factor that we consider as why this was not a matter of public concern. Furthermore, It says to all the current and past employees who support the fire department. I mean, presumably, you're making something public to the past employees so that they can apply whatever pressure they have on the city, right? Yes, and just because That seems to me that's different than looking at the employment status of current employees. I give you that one. But when you throw in the past employees, why would you throw in the past employees? If it's a matter of simply some sort of internal matter, they're not part of the city anymore. Excuse me, they're not part of the fire department anymore. Well, if you look at the termination letter from August 26, 2014, it specifically states a post on Facebook indicating fire department personnel would not have a job as of October 2, 2014. It's our position that that statement was only, that Mr. Holbrook was terminated as a result of that statement only as it relates to the current employees, and the past employee statement was not considered. So my understanding of the Facebook post, and I'm having trouble finding the actual Facebook post, but it's on, I'm looking at page ID 137. It says to all of the current slash past employees and those who support the fire department. So isn't that talking to the whole public of the village of Lincoln Heights saying, hey, everybody who supports the fire department, which presumably is everybody who wants to have fire protection, and then going on into the issues of insurance. So it seems to me that that is going well beyond the current fire department employees. Well, two parts, Your Honor. As I just stated, he was not terminated for his speech based to those third parties or to the former employees. And as it relates to specifically address your concerns, whether or not that is a public concern, as I stated previously, the United States Supreme Court has held that it's important to look at the context of the statement that was given and the overall message. It's our position that the overall message of this Facebook post was that the village of Lincoln Heights could lose insurance, and as a result, there could be some people misplaced as a result, which is solely as the district court held in this court, in this case, an internal personnel issue. So the termination letter that I'm reading on page ID 10 says, post on Facebook indicating fire department personnel would not have a job. That doesn't seem to limit it to the post on Facebook directed to the current employees. Well, Your Honor, you're correct. It doesn't specifically say past or present employees. The post on Facebook indicating that the fire department would not have a job as it relates to the whole of the Facebook post, it would seem to me. I respectfully disagree, Your Honor, but nevertheless, it's still not a matter of public concern. And the final prong. Before you leave the Facebook thing, on the district court's opinion, page 310, where the district court is quoting the Facebook page, the district court has left out the language that I was reading on page ID 137 to all of the current and past employees and those who support the fire department is what 137 says, but the district court opinion deletes the and those who support the fire department. Do you know why there is that deletion? I don't know, Your Honor, why the district court deleted that, but I know later in its opinion the district court stated, I apologize they don't have the exact page, but they did consider all of the information in front of them and made a determination that summary judgment was proper in this case. The final prong that this court must consider to determine whether or not Mr. Holbrook's speech was protected is to determine whether or not Ms. Holbrook had an adequate justification for terminating Mr. Holbrook. The appellant received confidential information in his role as fire chief, despite a job requirement, which was to, as he admits in his deposition testimony, to maintain morale and to retain employees. He breached both of those duties, thereby causing a termination that was just of Mr. Holbrook. Even if this court finds that Mr. Holbrook's speech was protected, summary judgment was still proper for another reason. Ms. Dumas is entitled to qualified immunity because her decision to terminate Mr. Holbrook was reasonable and did not clearly violate any of his rights. A government official is not liable in her personal capacity unless the official violated a constitutional or statutory right, and that right must be clearly established at the time of the challenged conduct or here determination. As to the first prong of qualified immunity, as it's been discussed, it's our position that there was no protected activity. As Mr. Holbrook was speaking as a public official in his capacity as a police chief, the matter did not touch public concern and that Ms. Dumas had an adequate justification for terminating Mr. Holbrook. But even if this court were to find that there was a statutory or constitutional violation against Mr. Holbrook, the right was not clearly established at the time Ms. Dumas decided to terminate Mr. Holbrook. There is no Sixth Circuit precedent on this issue, nor is there any Supreme Court case directly relating to any of the issues that involve this case. Well, I thought the law is pretty clearly established in terms of First Amendment protection of employee speech. So we have Lane and we have Garcetti and so forth. Sure. Yes, Your Honor, and the appellant, I believe, has cited those cases in his brief, but it's our position that those cases are not applicable in this case for a variety of reasons. First, those issues in Lane and Garcetti deal with matters of public concern and deal with matters of mismanagement. But you said even if it is a matter of public concern. I mean, before you got into qualified immunity, you said even if it is a matter of public concern. So I guess I'm following you here. I'm sorry if I confused you, Your Honor. It's our belief that it is not a matter of public concern. The assumption that you're making here is that if we find that there's no constitutional right that was violated, then you win. Yes. But now you're telling us, but also please look at qualified immunity as an alternative basis. So don't we have to assume that there was a constitutional right that you violated? In order, yes. And you want to say, but it isn't clearly established. And so my question to you was, why aren't Lane and Garcetti pretty clearly establishing what the law is here? Obviously, we have two different sides disagreeing as to what it is, but that's always the case. Yeah. So what makes this a case that's appropriate for qualified immunity? You have to be focusing on the clearly established prong, I think. Yes, and I agree, Your Honor. The relevant inquiry here is whether or not Ms. Dumas, at the time of her termination of Mr. Holbrook, knew that reasonably, reasonably believed that a government employee could fire an employee for sending confidential internal management information received within his scope of his job duties as a fire chief. There's simply no case speaking directly to those issues, and that's why it's our position that it was not clearly established. So is the key to the qualified immunity the idea that this was confidential information that was given to him? No, that is not the key. In this case, it was that the type of information. It didn't matter that it was confidential then? It was an internal communication spoken to Mr. Holbrook, but this issue does not turn on the fact of whether or not it was confidential. May I briefly conclude? I see I'm out of time. We ask that this court affirm the district court's grant of summary judgment, as Mr. Holbrook was not speaking on a matter of public concern when he spoke in his official duties, and Ms. Dumas is also entitled to qualified immunity. Thank you. Thank you, Counsel. Your Honor, I'd like to point out that the first email which was sent to Mr. Holbrook was also sent to members of Village Council, which made it a matter of public concern. Obviously, the Village Council aren't part of the administration of the Village. The issue was going to come up in the following, and it did in fact come up at the next scheduled meeting the following Monday. You're saying because something goes to the City Council members, it's therefore by definition a matter of public concern? No, it wasn't confidential, Your Honor, but they brought it to the attention. They didn't attach any confidentiality to the memo. I think that it was a matter, and it is a matter of public concern, whether the Fire Department continues. Regarding the second part of the test, the balancing test, now this is entirely based on a very short passage in the deposition that appears at page 117. Closing counsel says, It's fair to say that when the firefighters learned of the Village's problem with the insurance, it affected their morale? Yes. Some of them started looking for jobs. Yes. Did some of them leave? Some. That passage does not tie any problems in morale or people looking for another job directly to my client's speech. It's the bigger problem about whether or not they're going to be able to find new insurance and whether the Fire Department has stayed open. When you're doing this balancing test that arose under Pickering and subsequent cases, you have to look at whether my client's particular speech was causing any, that particular speech, there was a counterweight on maintaining government efficiency that was greater than that. Because it had already been. . . Here's what I don't understand about that argument. This is decided on summary judgment, right? Yes. So at that point, you've got to come forward with evidence that rebuts the basis upon which they're seeking summary judgment. They rely upon that deposition excerpt. So you knew that. Now, you had the opportunity then to address that. I take it these questions and answers were elicited by the attorney for the city in the deposition? That's right, Your Honor. So you had the chance during the deposition to have asked for any additional clarification of that, right? And for any number of reasons, you didn't, right? Well, actually, I think it was clarified in an affidavit that I submitted with the much for summary judgment. Well, I was going to. . . So that's all there is in the deposition. Right. So then you have the opportunity to submit anything else you want. Right. You get into the question of whether it's contrary to the testimony of your client. But my point is that their case is based upon what is. . . So we have to look at the affidavit? So what does the affidavit tell us about the fact that these people really weren't upset, they really didn't seek other jobs, they really didn't leave because of the situation? Well, no, Your Honor, I think my point is why did they leave? Talk to my point, okay? Yes. Why did they leave? That's what you're asking me. And so does the affidavit address that? I believe it does, but, Your Honor, I think more. . . What does it say? More. . . What does it say? Essentially, these people left for reasons that we don't necessarily know. He says, yes, some of them there was morale problems. We don't know what the morale problems, we don't know who the people were. It says some of them started looking for jobs. Your affidavit doesn't add anything. It doesn't explain what you say is the ambiguous or inadequate. . . May I finish just one question? I'm sorry, Your Honor. Thank you. So your affidavit doesn't address what you say are the deficiencies in the short question and answer in the deposition. Your Honor, honestly, I don't recall exactly. My point is, though, that I think these reasons, as they're set forth in the deposition, are insufficient. They're too speculative. You can't just say, well, there were morale problems and claim that it was caused by my clients sending an e-mail, as the district court does. I thought the question was, did the e-mail create morale problems? And you can't say that based upon the deposition testimony. Didn't it say yes? But it's not because of the e-mail. It says, when the firefighters learned of the village's problem. That could be anything. That could be through attending the meeting, or that could be . . . So you're saying it doesn't attribute it to the e-mail as opposed to other sources of information. That's exactly correct, Your Honor. That was my point. I'm sorry if I've confused you. Finally, I'd like to point out on the issue of qualified immunity. This court has held, in at least two cases that I'm aware of, that the contours of the right of free speech within the . . . in the context of public appointment, have been defined since Connick v. Myers, which is a Supreme Court case from 1982. Most profoundly, I think in the 1997 case, Williams v. Commonwealth of Kentucky. I cited that in my brief. I believe that any reasonable official, Ms. Dumas, would have known that these . . . the speech, especially the Facebook and the talking with a friend who was in a neighboring fire department, were not . . . were protected speech. They were not made in his official capacity or would fall within the scope of Garcetti. Yet, those were cited in the termination letter as grounds for terminating him. So, we believe that this is an unlawful restraint on my client's free speech rights. And, we'd ask that the case be reversed on those grounds. Thank you, Counsel. Thank you. The case will be submitted.